In re Jennie W. MARTIN'S RETAIL LIQUOR LICENSE NO. 1517.
No. A-4025.

District Court, Alaska. Second Division. Nome.

Oct. 19, 1954.

Russell R. Hermann, U. S. Atty., Nome, for petitioner. Collins and Clasby, Fairbanks, for respondent.

HODGE, District Judge.

Complaint was filed by the United States Attorney in this cause for revocation of a retail liquor license issued to the above licensee for the year 1954, upon the grounds, amongst others, that the licensee falsely stated in her application for the license that no person or persons other than the applicant had any direct or indirect interest in the business to be covered by the license. This Court, upon hearing of motions of the licensee, has previously sustained the allegations of the complaint as sufficient under an applicable statute to grant the relief sought, although denying such relief for other causes alleged in the complaint. (Opin-

ion filed October 2, 1954, 15 Alaska 171.) The issue of fact upon this remaining charge was by stipulation of the parties upon order to show cause submitted by affidavits, without briefs or oral argument, from which the following facts appear undisputed:

On November 30, 1953, Jennie W. Martin filed with the Clerk of this court her application for a retail liquor license in the City of Nome, which was referred to the City Council as required by law, and upon approval by the Council an order was entered on December 16, 1953, approving such license upon the basis of the application and ordering the Clerk to issue the same, which license was accordingly issued. No other name of applicant or person interested therein appears on the application. The form application, sworn to by the applicant, contains the following statement:

"Applicant declares: * * * That no person or person other than the applicant has any direct or indirect financial interest in the business for which this license is sought; * * *."

There is of record a deed and bill of sale executed June 25, 1953, between Hilkey Robinson of Nome, as seller, and Jennie W. Martin and Thomas N. Martin of Nome, as buyers, covering the same premises as described in the application, together with all furniture and fixtures, stock of liquors, beverages, etc., and the good will of the business theretofore conducted by the seller under the name of "Nome Liquor Store." No subsequent transfer of such property appears to have been made. There is also recorded a real and chattel mortgage executed July 1, 1953, by Jennie W. Martin and Thomas N. Martin, dba Nome Liquor Store, as mortgagors, to the Miners and Merchants Bank of Alaska, mortgaging the same premises and personal property as security for payment of a promissory note bearing the same date in the sum of $29,000 and interest thereon, signed and acknowledged by said Jennie W. Martin and Thomas N. Mar-

tin. This mortgage contains a copy of the note referred to, signed as follows:

"Nome Liquor Store

"By Jennie W. Martin    Partner

"By Thomas N. Martin    Partner"

This mortgage appears to have been satisfied of record on October 28, 1953, of even date with a second real and chattel mortgage likewise executed by Jennie W. Martin and Thomas N. Martin, doing business under the firm name and style of Nome Liquor Store, mortgagors, to the said Miners and Merchants Bank of Alaska as mortgagee, to secure payment of a promissory note in the sum of $43,000 with interest thereon, which note as appears from the mortgage is also signed by Jennie W. and Thomas N. Martin each as "partner." At the time of the application for the license both such deed and bill of sale and the mortgage of October 28, 1953, were in effect.

In response to such proof, the licensee filed her affidavit corroborated by affidavits of her son Thomas N. Martin, Leslie A. Stevens, accountant, James A. von der Heydt, attorney; Grant Jackson, President of the mortgagee bank; and three representatives of wholesale liquor dealers, alleging in substance that she and her son Thomas were not in fact partners in the business of the Nome Liquor Store; that her son had assisted her in various enterprises though keeping their affairs separate, that during the year 1951 they became jointly interested in purchasing the Nome Liquor Store but that such proposal was not culminated; that in 1953 the sellers wished to complete the sale but that it was decided that she would purchase and operate the business as her own except for assistance of her son in "acquiring the property and starting the operation." Further that the bank agreed to make a loan for such purpose provided that they both execute the note, that she did not inform Mr. Jackson or Mr. Robinson that she intended to own and operate the business as her own, as such did not occur to her "as significant," and that in effect Thomas N. Martin signed

such note as an accommodation maker only; further that she has ever since such acquisition operated and conducted such business as her own, purchased stock and carried all accounts in her name, received all revenue and profits, procured a business license from the Department of Taxation and an Internal Revenue stamp in her own name, paid taxes assessed on the property to her individually, and returned to the Collector of Internal Revenue for the year 1953 an income tax return on such business as individually operated, all with the assumption that she was the sole owner; and that her son had no part in such business and never has had any interest therein, except that upon thirteen occasions he had signed checks drawn upon the account of the Nome Liquor Store in the said bank, likewise as an accommodation, signed "Nome Liquor Store by Thomas N. Martin" or "Thomas N. Martin, Nome Liquor Store." The affidavit of the licensee further states as follows:

> "I further affirm that his (Thomas Martin) 'interest of record' by virtue of the Bill of Sale, and as might be implied from his execution of the mortgage, are the direct result of our lack of attention to proper details, neither of us intending or realizing any misrepresentation."

The affidavit of Thomas N. Martin alleges that he signed the note in order to secure funds to make the purchase, that in order to obtain better credit they did not inform the banker that Mrs. Martin would assume the entire responsibility of the business; and disclaims any interest therein.

The only question for determination is whether under these circumstances Thomas N. Martin had at the time of application for license such a "direct or indirect financial interest" in the business as will invoke revocation of the license for a statement made in the application which is found to be untrue; under the provisions of Sec. 35–4–14 and Sec. 35–4–16, subsec. (D), A.C.L.A., as discussed in the previous opinion.

230

· The term "interest," or "financial interest," must be construed according to the context in which used, and is held to include "concern," as well as "right, title; also, part", or "advantage." 47 C.J.S., Interest, p. 1. The New Century Dictionary defines "interest" as

> "The fact or relation of being concerned in or connected with a thing through having a right or title to it, a share in it, or some claim upon it," including "any right of ownership in property or in a commercial or financial undertaking," or "to have an interest in the success of a venture."

"Interest, direct or indirect" in a thing is held to embrace a legal or equitable interest. United States v. Delaware & Hudson Co., 213 U.S. 366, 29 S.Ct. 527, 537, 53 L.Ed. 836.

Assuming that Thomas Martin is an accommodation maker on the note as contended (which is surely to be doubted), he would still be liable under the Negotiable Instruments Act to a holder for value, whether the bank knew him to be an accommodation party or otherwise. And it may be safely assumed that it was the intention of the parties that such indebtedness be paid out of the proceeds of the business; hence it cannot be denied that he has a concern or interest in the success of such venture. Nor can we overlook the fact that he was and is a record owner of an undivided one-half interest in both the premises and the business itself, and a joint mortgagor of such interest. The conclusion is inescapable that Mr. Martin had at such time an interest, direct or indirect, in the business for which the license was sought; and therefore that the statement in the application of the licensee was untrue.

■■ There should also be considered the matter of whether such misrepresentation was wilful, or otherwise excusable. 165 A.L.R. 1143, 1144; In re Jung, 13 Cal.2d 199, 88 P.2d 679. Decisions examined on this subject and on the matter of false statement as to persons interested gen-

erally disclose that such want of wilful design is held excusable only where the applicant had no knowledge of the true facts, or opportunity to do so. See also cases cited Annotation 165 A.L.R. 1154. In the decisions of the Federal Courts here noted (cited in previous opinion as to materiality of the statement) permits issued under the National Prohibition Act were ordered revoked for misrepresentation or concealment amounting to fraud or deception of the licensing authority. But such were under the express terms of a statute authorizing revocation if the permit be procured "through fraud, or misrepresentation, or concealment of material fact." 27 U.S.C.A. § 204(e). I do not find that such actual fraud or deception is essential to be proven under our statute, which directs the Court to revoke the license whenever it is made to appear "that *any of the statements*" required to be made in the application *"are untrue."* Sec. 35–4–14, A.C.L.A. By analogy, an application for a liquor license was denied in the case of In re Alaska Labor Trades Ass'n, 10 Alaska 472, by reason of the financial interest of one Eagleson in a club seeking such license, arising out of a trust agreement with the club, in which there appears no showing of fraud or actual deceit intended.

Under the provisions of Sec. 35–4–13, A.C.L.A. the City Council is delegated the right to pass upon "the integrity of the applicant and the desirability of the issuing of a license for the premises mentioned therein", subject to final approval by the Court. It is the plain duty of the applicant to disclose any interest of another in order that the Council and the Court may determine this important question.

The licensee has not shown sufficient excuse to ignore in her application the known interest of her son in the premises and business. Under the plain mandate of the statute this Court has no alternative but to order that the license be revoked for the false representation made, and the premises abated as a retail liquor store. It is so ordered.